Appeal Case No.: 24-12662-AA
Appeal Case No.: 24-12964-AA

_____

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

DENNIS SCOTT, CHAD DRIGGERS,
DOUGLAS WILLIS, and GEORGE ROWLAND,
Plaintiffs-Appellees,

v.

CITY OF DAYTONA BEACH, FLORIDA,
Defendant-Appellant.

_____

**Appeal from the United States District Court for the
Middle District of Florida, Orlando Division
6:22-cv-2192-WWB-RMN**

_____

## PLAINTIFFS-APPELLEES' ANSWER BRIEF

_____

**Chelsea Dunn,** Fla. Bar No. 1013541
Chelsea.Dunn@southernlegal.org
**Jodi Siegel,** Fla. Bar No. 511617
Jodi.Siegel@southernlegal.org
**Daniel Marshall,** Fla. Bar No. 617210
Dan.Marshall@southernlegal.org
**Southern Legal Counsel, Inc.**
1229 NW 12th Avenue
Gainesville, FL 32601-4113
(352) 271-8890

*Attorneys for Plaintiffs Appellees*

*Dennis Scott, et al v. City of Daytona Beach, Florida*
Appeal Case No.: 24-12662-AA
Appeal Case No.: 24-12964-AA

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Eleventh Circuit Court of Appeals Rule 26.1, Plaintiffs-Appellees

certify that the following persons may have an interest in the outcome of this case:

1.    Berger, Hon. Wendy W., *U.S. District Judge*

2.    City of Daytona Beach, Fla., *Defendant Appellant*

3.    Clarke, Kristen, *Assistant Attorney General, U.S. Department of Justice, Special Litigation Section, Civil Rights Division*

4.    Driggers, Chad, *Plaintiff Appellee*

5.    Dunn, Chelsea, *Attorney for Plaintiffs Appellees*

6.    George, Paul, *former Attorney for Plaintiffs Appellees*

7.    Gross, Benjamin, *City Attorney for Appellant City of Daytona Beach*

8.    Holland & Knight, P.C., *Attorneys for Plaintiffs Appellees*

9.    Johnston, Maureen, *Acting Deputy Chief, U.S. Department of Justice, Special Litigation Section, Civil Rights Division*

10.   Kahn, Michael, *Attorney for Defendant Appellant*

11.   Marshall, Daniel, *Attorney for Plaintiffs Appellees*

12.   Michael Kahn, P.A., *Attorney for Defendant Appellant*

13.   Neelakanta, Sabarish P., *Attorney for Plaintiffs Appellees*

*Dennis Scott, et al v. City of Daytona Beach, Florida*
Appeal Case No.: 24-12662-AA
Appeal Case No.: 24-12964-AA

14.    Norway, Hon. Robert M., *U.S. District Court Magistrate Judge*

15.    Ramos, Eduardo, *Attorney for Plaintiffs Appellees*

16.    Rosenbaum, Steven H., *Section Chief, U.S. Department of Justice, Special Litigation Section, Civil Rights Division*

17.    Rowland, George, *Plaintiff Appellee*

18.    Scott, Dennis, *Plaintiff Appellee*

19.    Siegel, Jodi, *Attorney for Plaintiffs Appellees*

20.    Southern Legal Counsel, Inc., *Attorneys for Plaintiffs Appellees*

21.    SPN Law LLC, *Attorney for Plaintiffs Appellees*

22.    United States Department of Justice, *Statement of Interest*

23.    Van Erem, Haley, *Trial Attorney, U.S. Department of Justice, Special Litigation Section, Civil Rights Division*

24.    Willis, Douglas, *Plaintiff Appellee*

## CORPORATE DISCLOSURE STATEMENT

There are no parent corporations or publicly traded corporations that have an interest in the outcome of this case.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee-Plaintiffs request oral argument in this matter, as this case raises important questions about First Amendment doctrine, including how courts determine whether a restriction on speech is content-based or content-neutral, and what is required for the government to overcome its burden under strict scrutiny. The Court's decision on the First Amendment activities in this case will impact many people and groups besides the litigants in this case.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . C-1

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . C-2

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

     CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

     FEDERAL RULES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

     STATE STATUTES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

     CITY ORDINANCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

     OTHER AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

     SECONDARY AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

STATEMENT OF ADOPTION OF PART OF APPELLANT'S BRIEF . . . . . . . xi

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     I.     Course of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     II.    Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     III.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.    THE DISTRICT COURT CORRECTLY FOUND THAT THE

       PANHANDLING ORDINANCE IS CONTENT-BASED. . . . . . . 11

       A.    The Panhandling Ordinance Only Singles Out and

              Regulates Requests for Immediate Donations. . . . . . . . . . . . 11

       B.    The District Court Did Not Err In Determining That, Even

              In Light Of *Austin*, The Panhandling Ordinance Is Content-

              Based. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       C.    The City Cannot Use A "Function or Purpose" Proxy To

              Escape The Fact That The Panhandling Ordinance Is

              Content-Based. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

II.   EVEN IF DEEMED FACIALLY CONTENT-NEUTRAL, THE

       PANHANDLING   ORDINANCE   IS   CONTENT-BASED

       BECAUSE IT TARGETS CERTAIN SPEAKERS AND THEIR

       MESSAGES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

III.  THE DISTRICT COURT CORRECTLY HELD THAT THE

       CITY'S PANHANDLING ORDINANCE CANNOT SURVIVE

       EITHER STRICT OR INTERMEDIATE SCRUTINY. . . . . . . . . . . 30

       A.    The Panhandling Ordinance Is Not Narrowly Tailored To

              Any Compelling Government Interest. . . . . . . . . . . . . . . . . . . 30

       B.    The Panhandling Ordinance Is Not Narrowly Tailored To

Any Significant Government Interest. . . . . . . . . . . . . . . . . . . . 35

IV.   THE DISTRICT COURT PROPERLY GRANTED SUMMARY

JUDGMENT AS THERE WERE NO DISPUTED ISSUES OF

MATERIAL FACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

A.   Whether Plaintiffs have standing. . . . . . . . . . . . . . . . . . . . . . . 42

B.   The nature of the government's interests. . . . . . . . . . . . . . . . . 45

C.   Whether the City's interests are likely to be advanced by

the Ordinance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

D.   The degree to which speech is burdened by the Ordinance. . . 47

E.   Whether the Ordinance is narrowly tailored . . . . . . . . . . . . . . 47

1.   Location-based restrictions . . . . . . . . . . . . . . . . . . . . . . 50

2.   Time of day restriction. . . . . . . . . . . . . . . . . . . . . . . . . 51

3.   Traffic restrictions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

4.   Conduct-related restrictions. . . . . . . . . . . . . . . . . . . . . 52

V.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

## TABLE OF CITATIONS

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . 41, 45, 48

*Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*,
    723 F.3d 1287 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 45

*Baker v. City of Fort Worth*, 506 F. Supp. 3d 413 (N.D. Tex. 2020) . . . . . . . . . . . 16

*Billups v. City of Charleston,* 961 F.3d 673 (4th Cir. 2020). . . . . . . . . . . . . . . . . 49

*Bischoff v. Florida*, 242 F. Supp. 2d 1226 (M.D. Fla. 2003) . . . . . . . . . . . . . . . . 34

*Brewer v. City of Albuquerque*, 18 F.4th 1205 (10th Cir. 2021) . . . . . . . . 37, 39, 47

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011) . . . . . . . . . . . . . . . . . . . . . . . . 31

*Browne v. City of Grand Junction*,
    136 F. Supp. 3d 1276 (D. Colo. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . 33, 51

*Buehrle v. City of Key West*, 813 F.3d 973 (11th Cir. 2015) . . . . . . . . . . . . . . . . 38

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . 41, 48

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) . . . . . . . . . . . . . . 18

*City of Austin v. Reagan National Advertising of Austin, LLC*,
    596 U.S. 61 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 12, 14-22, 28

*City of Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Crawford v. Lungren*, 96 F.3d 380 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . 47

*Cutting v. City of Portland*, 802 F.3d 79 (1st Cir. 2015) . . . . . . . . . . . . . . . . 39, 49

*Dawkins v. Fulton Cnty. Gov't*, 733 F.3d 1084 (11th Cir. 2013) . . . . . . . . . . 41, 45

*Fed. Sav. & Loan Ins. Corp. v. Haralson*,
    813 F.2d 370 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*FF Cosms. FL, Inc. v. City of Miami Bch.*,
    866 F.3d 1290 (11th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39, 49

*Flanigan's Enters., Inc. of Ga. v. Fulton Cnty.*,
    596 F.3d 1265 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
    901 F.3d 1235 (11th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
    11 F.4th 1266 (11th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*GEFT Outdoor, LLC v. City of Westfield*,
    39 F.4th 821 (7th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169 (11th Cir. 2017) . . . . . . . . 7

*Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 16

*Henagan v. City of Lafayette*, No. 6:21-CV-03946,
    2022 WL 4546721 (W.D. La. Sept. 27, 2022) . . . . . . . . . . . . . . . . . . . . . . 16

*Heffron v. International Society for Krishna Consciousness, Inc.*,
    452 U.S. 640 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Henry v. Attorney General, Ala.*, 45 F.4th 1272 (11th Cir. 2022) . . . . . . . . . . . . 43

*Holder v. Humanitarian L. Project*, 561 U.S. 1 (2010) . . . . . . . . . . . . . . . . . . . . 18

*Homeless Helping Homeless, Inc., v. City of Tampa*, No. 8:15-cv-1219-T-23AAS,
    2016 WL 4162882 (M.D. Fla. Aug. 5, 2016) . . . . . . . . . . . . . . . . . . . . . . . 51

*Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*,
      470 F. Supp. 3d 888 (S.D. Ind. 2020)................................ 28

*Int'l Outdoor, Inc. v. City of Troy*, 77 F.4th 432 (6th Cir. 2023) .............. 20

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) .............. 42

*KH Outdoor, LLC v. City of Trussville*,
      458 F.3d 1261 (11th Cir. 2006) ..................................... 44

*LaCroix v. Town of Fort Myers Beach*,
      38 F.4th 941(11th Cir. 2022) ....................................... 19

*Leverett v. City of Pinellas Park*, 775 F.2d 1536 (11th Cir. 1985)............. 44

*Loper v. N.Y.C. Police Dep't*, 999 F.2d 699 (2d Cir. 1993) ............ 23, 24, 26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................ 42

*Mazo v. N.J. Secretary of State*, 54 F.4th 124 (3d Cir. 2022)............... 19, 20

*McCraw v. City of Okla. City*, 973 F.3d 1057 (10th Cir. 2020) .............. 34

*McCullen v. Coakley*, 573 U.S. 464 (2014) ............ 31, 34, 36, 39, 40, 47, 49

*McLaughlin v. City of Lowell*,
      140 F. Supp. 3d 177 (D. Mass. 2015)........................... 51, 53

*Messina v. City of Fort Lauderdale*, 546 F. Supp. 3d 1227
      (S.D. Fla. 2021) ................ 12, 13, 15, 20, 23, 30, 32, 34, 37, 51, 53

*Murdock v. Pennsylvania*, 319 U.S. 105 (1943)............................ 24

*National Federation of the Blind of Texas, Inc. v. Arlington*,
      109 F.4th 728 (5th Cir. 2024) ..................................... 25

*Norton v. City of Springfield*, 806 F.3d 411 (7th Cir. 2015)................. 51

*Planet Aid v. City of St. Johns*, 782 F.3d 318 (6th Cir. 2015)................ 26

*Project Veritas v. Schmidt*, No. 22-35271,
    2025 WL 37879 (9th Cir. Jan. 7, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) . . . . . . . . . . . . .   1, 12, 14-18, 20-22, 27, 28, 30, 31, 46

*Reynolds v. Middleton*, 779 F.3d 222 (4th Cir. 2015). . . . . . . . . . . . . . . . . . . 23, 36

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25, 26, 36

*Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . 23, 34

*Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120 (3d Cir. 2023) . . . . . . . . . . . 20

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
    502 U.S. 105 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Smith v. City of Fort Lauderdale*, 177 F.3d 954 (11th Cir. 1999) . . . . . . . . . . 16, 23

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*TikTok Inc. v. Garland*, No. 24-656,
    2025 WL 222571 (U.S. Jan. 17, 2025). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994). . . . . . . . . . . . . . . . . . . 33, 38

*United States v. Lee*, No. 1:23-cr-00368 (TNM),
    2024 WL 4836401 (D.D.C. Nov. 20, 2024). . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000) . . . . . . . . . . . . 30, 31

*U'SAgain, LLC v. City of Los Angeles*, No. CV 24-6210-CBM-BFMx,
    2024 WL 4127273 (C.D. Cal. Sept. 9, 2024). . . . . . . . . . . . . . . . . . . . . . . . . 26

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Vigue v. Shoar*, 494 F. Supp. 3d 1204 (M.D. Fla. 2020) . . . . . . . . . . . . . . . . . . . . 34

*Vill. of Schaumburg v. Citizens for a Better Env't.*,
 444 U.S. 620 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 23, 25, 26

*Waggoner v. City of Dallas,* No. 3:22-CV-02776-E-BK,
 2023 WL 5517220 (N.D. Tex. Aug. 25, 2023) . . . . . . . . . . . . . . . . . . 18-20

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) . . . . . . . . . . . 16, 27, 31, 36, 39

*Williams Yulee v. Fla. Bar*, 575 U.S. 433 (2015). . . . . . . . . . . . . . . . . . . . . . . 30, 31

## FEDERAL RULES

Fed. R. App. P. 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Fed. R. Civ. P. 56(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 48

## STATE STATUTES

§ 70.002, Fla. Stat . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

§ 316.126 Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

§ 784.011, Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

§ 784.03, Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

§ 810.08, Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 40

§ 810.09, Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 40

§ 877.03, Fla. Stat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**CITY ORDINANCES**

§ 66-1, Code of Ordinances, City of Daytona Beach, Florida
　　(City of Daytona Beach Ordinance No. 19-27) . . . . . . . . . . . . . . . . . . *passim*

**OTHER AUTHORITIES**

11th Cir. R. 26.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

11th Cir. R. 32-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

**SECONDARY AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Black's Law Dictionary (12th ed. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## <u>STATEMENT OF ADOPTION OF PART OF APPELLANT'S BRIEF</u>

Plaintiffs-Appellees adopt the Defendant-Appellant's Course of the Proceedings (Initial Br., at 2-5), and add one additional point.

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether the district court properly applied both *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), and *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2021), to determine that the City of Daytona Beach's Panhandling Ordinance is content-based.

II.   Whether the district court correctly determined that the City of Daytona Beach's Panhandling Ordinance does not survive strict scrutiny.

III.  Whether the Panhandling Ordinance fails to survive intermediate scrutiny, should that standard apply.

IV.   Whether the district court properly granted summary judgment where there were no disputed issues of material fact.

## STATEMENT OF THE CASE

### I.      Course of Proceedings

Plaintiffs-Appellees adopt the Defendant-Appellant's Course of Proceedings,

except to add that after appealing the district court's order that preliminarily enjoined

enforcement of the Ordinance, Defendant City of Daytona Beach ("the City") filed

motions to stay the injunction pending appeal in both the district court (ECF 76[1]) and

this Court. (Doc. 14-1, Case No. 23-133119-H (11th Cir. 2023)). Both motions to stay

were denied. (ECF 105; Doc. 25, Case No. 23-133119-H (11th Cir. 2023)).

### II.     Statement of the Facts

On February 6, 2019, the Daytona Beach City Commission adopted Ordinance

No. 19-27, an ordinance regulating panhandling within the Daytona Beach city limits,[2]

codified at § 66-1 of the Code of Ordinances, City of Daytona Beach, Florida

---

[1]   Plaintiffs will refer to documents filed in the district court using "ECF."

[2]   "Panhandle" is defined within the Ordinance as: "to beg or make any demand
or request made in person for an immediate donation of money or some other article
of value from another person for the use of one's self or others, including but not
limited to for a charitable or sponsor purpose or that will benefit a charitable
organization or sponsor. As used in this article, the word 'solicit' and its forms are
included in this definition. Panhandling is considered as having taken place regardless
of whether the person making the solicitation received any contribution. Any purchase
of an item for an amount far exceeding its value, under circumstances where a
reasonable person would understand that the purchase is in substance a donation,
constitutes a donation as contemplated in this definition. Begging is included in this
definition of panhandling. Soliciting is included in this definition of panhandling."
(ECF 1-3, at 10, § 66-1(b)(3).)

-2-

("Daytona Beach City Code") (hereinafter "Panhandling Ordinance" or "Ordinance"). (ECF 1-3, at 1, 14.) The Ordinance and the voluminous record the City provides as justification for it focus on a certain type of speech—"panhandling and begging"—and those who participate in that speech—"panhandlers and beggars." (*See generally* ECF 1-3, at 2-8, § 66-1(a); ECF 20-2 to 20-12.) The Ordinance prohibits panhandling in the following areas:

(a) within twenty (20) feet of any entrance or exit of commercially zoned property, bus or trolley stops or any public transportation facility, ATMs, public parking lots and garages, parking meters, and public restrooms;
(b) within one hundred (100) feet of daycares and schools;
(c) within one hundred and fifty (150) feet of traffic intersections; and
(d) on the city Boardwalk.

(ECF 1-3, at 11-12, § 66-1(c)(3).) The Ordinance also makes it unlawful to panhandle at:

(a) any operating outdoor dining area, amphitheater seating area, playground, or outdoor merchandise area;
(b) any transit stop, taxi stand, or in a public transit vehicle;
(c) while the person being solicited is standing in line waiting to be admitted to a commercial establishment;
(d) by touching the person being solicited without that person's consent;
(e) by using profane or abusive language during the solicitation or following an unsuccessful solicitation;
(f) by using any gesture or act intended to cause a reasonable person to be fearful or feel compelled to accede to the solicitation;
(g) while under the influence of alcohol or an illegal controlled substance; or
(h) after dark.

(ECF 1-3, at 12, § 66-1(c)(4).) Additionally, the Ordinance prohibits "Aggressive

Panhandling"[3] "on any sidewalk, highway, street, roadway, right-of-way, parking lot,

---

[3] Aggressive Panhandling is defined as:

(a) to approach or speak to a person and demand, request or beg for money or a donation of valuable property in such a manner as would cause a reasonable person to believe that the person is being threatened with imminent bodily injury or the commission of a criminal act upon the person approached or another person in the solicited person's company, or upon property in the person's immediate possession (for example, placing oneself within 2 feet of a solicited person and/or using abusive or profane language in a loud voice while demanding or requesting money); or

(b) To maintain contact with a solicited person and continue demanding, requesting or begging for money or a donation of valuable property after the solicited person has made a negative response to an initial demand or request for money or a donation (for example, walking in front of, next to, or behind a solicited person while continuing to demand, request or beg for money from that person after that person has refused to donate or give money); or

(c) To obstruct, block or impede, either individually or as part of a group of persons, the passage or free movement of a solicited person or a person in the company of a solicited person, including persons on foot, on bicycles, in wheelchairs or operating motor vehicles or persons attempting to enter or exit motor vehicles (for example, walking, standing, sitting, lying, or placing an object in such a manner as to block passage of another person or vehicle, or to require another person or driver of a vehicle to take evasive action to avoid physical contact); or

(d) To touch or cause physical contact to a solicited person or a person in the company of a solicited person, or to touch any vehicle occupied by a solicited person or by a person in the company of the solicited person, without the person's express consent; or

(e) To engage in conduct that would reasonably be construed as intended to intimidate, compel or force a solicited person to accede to demands.

-4-

park, or other public or semi-public area or in any public building lobby, entranceway, plaza or common area, public forum or limited public forum" (ECF 1-3, at 11, § 66-1(c)(1)), and further prohibits a person from approaching a driver or passenger of a motor vehicle for the purpose of panhandling, soliciting, or begging if done in an "aggressive manner." (ECF 1-3, at 12, § 66-1(c)(4)(a).)

Violation of the Ordinance is punishable by a jail sentence, not to exceed sixty days, or a fine, not to exceed $500.00, or both. (ECF 1-3, at 12-13, § 66-1(d); MD ECF 108-5.) The City immediately began enforcement of the Ordinance upon its enactment. (ECF 39-8, at 1.) At the filing of the Amended Complaint, the Daytona Beach Police Department had made at least 246 arrests for violations of the Ordinance. *Id*.

Plaintiffs-Appellees Dennis Scott, Chad Driggers, Douglas Willis, and George Rowland were residents of the City of Daytona Beach experiencing poverty as of the filing of the complaint. (ECF 39-1, at 1, ¶¶ 1-4; ECF 39-2, at 1, ¶¶ 1-4; ECF 39-3, at 1, ¶¶ 1-4; ECF 39-4, at 1, ¶¶ 1-5.) They stand on public sidewalks or on the medians or shoulders of public streets, in areas frequented by pedestrians, near businesses, or near intersections to communicate their messages of need. (ECF 39-1, at 1, ¶¶ 5-8; ECF 39-2, at 1, ¶¶ 5-8; ECF 39-3, at 1, ¶¶ 5-8; ECF 39-4, at 1, ¶¶ 6-8.) The maps in

---

(ECF 1-3, at 8-9, § 66-1(b)(2).)

the record show that the exclusion zones created by the Ordinance overlap with these areas. *See, e.g.*, ECF 20-6, at 27 (ATM); ECF 20-5, at 180, ECF 20-5, at 203 (schools); ECF 20-6, at 26 (park); ECF 20-5, at 203, ECF 20-6, at 5 (business entrances). Plaintiffs engage in charitable solicitation by holding signs saying things such as "Hard times. Hungry and homeless," holding out hats towards passersby, making verbal requests to "spare any change," or offering palm frond roses in exchange for a donation. (ECF 39-1, at 1, ¶¶ 6-8; ECF 39-2, at 1, ¶¶ 6-8; ECF 39-3, at 1, ¶¶ 6-7; ECF 39-4, at 1, ¶¶ 7-8). All Plaintiffs make requests for charity at various times of the day, and Driggers, Willis, and Rowland sometimes solicit charity at night. (ECF 39-5, ECF 39-6, ECF 39-7.)

Plaintiffs' charitable solicitation communicates their need for food, money, and other necessities while raising awareness about the existence of homelessness in the City and the people who are experiencing poverty. Through their requests for charity, they intend to convey that they are in need of assistance. (ECF 39-1, at 1, ¶ 8; ECF 39-2, at 1, ¶ 8; ECF 39-3, at 1, ¶ 15; ECF 39-4, at 1, ¶¶ 7-8.) They receive food, care packages containing water, hygiene products and clothing items, or gift cards from passersby. (ECF 39-1, at 1, ¶ 9; ECF 39-2, at 2, ¶ 9; ECF 39-3, at 2, ¶ 17; ECF 39-4, at 2, ¶¶ 9.) Sometimes passersby give cash. *Id.* At times, they are approached while engaging in charitable solicitation by individuals who want to offer assistance with jobs or housing. (ECF 39-1, at 2, ¶ 18.)

Plaintiffs have been arrested, jailed, and/or warned on multiple occasions against engaging in panhandling in downtown and other areas of the city under threat of arrest for violating the Ordinance. (ECF 39-1, at 2, ¶¶ 10-15; ECF 39-2, at 2, ¶¶ 10-12; ECF 39-3, at 2, ¶¶ 9-12; ECF 39-4, at 2, ¶¶ 10, 12.) Plaintiffs wish to continue to engage in these activities and need to do so to contribute to their survival. (ECF 39-1, at 3, ¶ 21; ECF 39-2, at 3, ¶ 16; ECF 39-3, at 3, ¶ 19; ECF 39-4, at 2, ¶ 15.) Plaintiffs could in the future make requests in ways that are prohibited by the Ordinance's ban on "aggressive" panhandling. (ECF 108-1, at 9-10 ¶10; ECF 108-2, at 10 ¶10; ECF 108-3, at 9-10 ¶10; ECF 108-4, at 10 ¶10.) The fear of arrest and prosecution, however, has significantly discouraged or hampered their ability to request donations. (ECF 39-1, at 2-3, ¶¶ 11-20; ECF 39-2, at 2, ¶¶ 13-15; ECF 39-3, at 2-3, ¶¶ 13, 18; ECF 39-4, at 2, ¶¶ 10, 13.) If the Panhandling Ordinance is allowed to stand, the suppression of Plaintiffs' First Amendment rights and the rights of those similarly affected will continue unabated.

## III.  Standard of Review

This Court reviews an order granting summary judgment *de novo. Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018). Questions of constitutional law are also reviewed *de novo. Id.* (citing *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1181 (11th Cir. 2017)). And, because this case implicates the free speech clause of the First Amendment, the Court

applies a mixed standard of review to the facts: historical facts are reviewed for clear error and constitutional facts are reviewed *de novo*. *Flanigan's Enters., Inc. of Ga. v. Fulton Cnty.*, 596 F.3d 1265, 1276 (11th Cir. 2010).

## SUMMARY OF THE ARGUMENT

The district court did not err in determining that the City's Panhandling Ordinance is unconstitutional, correctly concluding that the Ordinance is content-based because it prohibits speech requesting immediate donations but allows other types of speech. It thus falls squarely within the Supreme Court cases of *Reed v. Town of Gilbert*, 576 U.S. 155, 169 (2015), and *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022), which hold that regulations are content-based if they discriminate based on topic, subject matter, or viewpoint.

Because it is content-based, the Panhandling Ordinance is reviewed under strict scrutiny, and it fails constitutional review because it is not narrowly tailored to any of the City's proffered compelling interests– protecting its citizens' lives, health, safety, and welfare. The Ordinance is over-inclusive because it sweeps up speech that does not implicate those interests, such as individuals who are peacefully holding a sign reading "Hungry, please help," and it is under-inclusive because it allows other forms of speech that would have the same impact on the governmental interests as the prohibited speech, such as a person walking into traffic to solicit signatures for a petition. Furthermore, the harms that the City recites can be addressed by less intrusive tools independent of the Ordinance, and the City offers no evidence that it has even considered, much less attempted to use, other methods.

Nor does the Ordinance pass intermediate scrutiny, if that standard applies. The

City has not demonstrated that the Ordinance is narrowly tailored to significant interests, or that there are sufficient alternative channels of communications.

Lastly, the district court did not err in determining that summary judgment was appropriate, as there were no disputed issues of material fact.

**ARGUMENT**

## I.  THE DISTRICT COURT CORRECTLY FOUND THAT THE PANHANDLING ORDINANCE IS CONTENT-BASED.

The City finds fault in the district court's determination that City Code § 66-1 is a content-based speech restriction, citing two primary arguments: (1) the court failed to appreciate the impact of *City of Austin v. Reagan National Advertising of Austin* on First Amendment doctrine (Initial Br., at 28-40[4]); and (2) the court "fundamentally misconstrued the purpose and effect" of the City's Panhandling Ordinance. (*Id*. at 41-44.) Both of these contentions are without merit; the Panhandling Ordinance is content-based, and the district court correctly determined *Austin* "cannot support the Challenged Provisions." (ECF 151, at 11.)

### A.  The Panhandling Ordinance Only Singles Out and Regulates Requests for Immediate Donations.

The Ordinance targets only one type of solicitation: requests for immediate donations. (ECF 151, at 10-11; ECF 1-3, at 10-12, § 66-1(b)(3), (c).) No other type of speech, such as "solicitations to patronize a business, attend an event, or support a religious or social cause," is circumscribed. (ECF 151, at 12.) Thus, whether the Ordinance's criminal penalties apply depends entirely on the content of the message.

Speech restrictions are content-based when they "single out any topic or subject

---

[4]  Plaintiffs use the page numbers in the Eleventh Circuit filing stamp at the top of the page, rather than the page numbers at the bottom, when citing to Defendant's Initial Brief.

matter for differential treatment." *Austin*, 596 U.S. at 71. This is so even if the law does not favor one viewpoint over another. *Reed*, 576 U.S. 155, 169 (2015) ("[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter."). Since *Reed*, courts have unanimously found that anti-panhandling ordinances were content-based restrictions on speech. *See, e.g.*, *Messina v. City of Fort Lauderdale*, 546 F. Supp. 3d 1227, 1238-39 (S.D. Fla. 2021) (collecting cases). Because the Ordinance singles out a single subject matter—requests for immediate donations—it is a content-based speech restriction that is presumptively unconstitutional and subject to strict scrutiny. The government bears the burden of proving that the law is narrowly tailored to a compelling government interest and is the least restrictive means of advancing that interest. *Reed*, 576 U.S. at 171.

The Panhandling Ordinance is analogous to the sign code at issue in *Reed*, which subjected signs to different treatment based "entirely on the communicative content of the sign," in that the City subjects only one type of message—requests for immediate donations—to the Ordinance's restrictions. *Id.* at 164. The Ordinance's definition of "panhandle" explicitly provides that the speech being restricted is only solicitations for immediate donations, a form of traditionally protected speech. (ECF 1-3, at 10, § 66-1(b)(3).) *See Vill. of Schaumburg v. Citizens for a Better Env't.*, 444 U.S. 620, 632 (1980) ("[C]haritable appeals for funds, on the street or door to door,

-12-

involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the First Amendment's protection."). The City readily acknowledges that the Ordinance only regulates requests for immediate donations (Initial Br., at 41-42).[5] The Ordinance does not regulate other types of solicitation, e.g., for event tickets, business, support for a political candidate, or attendance at religious services. (*See* ECF 1-3, at 10, § 66-1(b)(3); ECF 106-2, at 69:23-72:13.) "As long as the speaker doesn't say something to the effect of 'I'm poor, please help' or 'Do you have some spare change?' he may approach a stranger anywhere in the City and utter any *other* message." *Messina*, 546 F. Supp. 3d at 1240-41 (finding an ordinance content based because it regulated in-person solicitations requesting immediate donations).

The City's argument that the Ordinance is content-neutral because "it reaches every conceivable instance where an immediate donation is made in response to a request" entirely misses the mark. (Initial Br., at 41-42.) In fact, it is because the Ordinance *only* regulates requests or solicitations for immediate donations of money that it discriminates based on topic or viewpoint and thus is content-based. As aptly noted by the district court, "the plain language of the ordinance at issue in this case

---

[5] In a footnote, the City suggests the Ordinance only applies when there is an exchange of money or other thing of value (Initial Br., at 42 n.7); however, the text of the Ordinance makes clear that it is the request—i.e., the speech—being regulated; a person can be arrested regardless of whether money changes hands. *See* ECF 1-3, at 12, § 66-1(b)(4).

circumscribes only solicitations for donations. . . . Therefore, this is not a case where the government regulates all types of solicitations without regard to topic, subject matter, or viewpoint." (ECF 151, at 12.)

The Ordinance does not, as the City contends, regulate solicitation generally, regardless of whether its definition purports to do so. The Ordinance defines "panhandle" as "to beg or make any demand or request made in person for an immediate donation of money or some other article of value . . . ." (ECF 1-3, at 10, § 66-1(b)(3).) This definition explicitly provides that the speech being restricted is not all solicitations, but merely those that are for immediate donations. Put another way, the ordinance is triggered by the content of the solicitation: whether it includes a request for an immediate donation of money or other article of value.

That the Ordinance's definition of "panhandling" includes "all requests for the immediate donation of money" does not render the Ordinance content-neutral. (*See* Initial Br., at 42.) A law cannot remove an entire topic of speech—here, requests for immediate donations—from the marketplace of ideas any more than it can discriminate based on viewpoint. *See Reed*, 576 U.S. at 169. And, as the district court rightly noted (ECF 72, at 9-10), the City's definition of "panhandling" does not include all types of solicitation, as that term was used in *Austin*; it does not include

solicitations for the sale of goods or services[6], or solicitations for things that do not

have immediate monetary value, such as signatures on a petition, attendance at church,

a vote for a political candidate, or donations at a later time. (*See* ECF 151, 11; ECF

1-3, at 10, § 66-1(b)(3).) *See also Messina*, 546 F. Supp. 3d at 1240-41. Thus, the

district court correctly found that the Ordinance regulates only immediate solicitations

for charitable contributions and is therefore content-based. (*See* ECF 151, at 10.)

## B.    The District Court Did Not Err In Determining That, Even In Light Of *Austin*, The Panhandling Ordinance Is Content-Based.

The City incorrectly argues that *Austin* modifies the content-neutrality inquiry

set forth in *Reed*. (Initial Br., at 33.) The *Austin* Court was clear that the decision did

not "cast doubt on any of our precedents recognizing examples of topic or subject-

matter discrimination as content based." *Austin*, 596 U.S. at 76. (*See also* ECF 72, at

10-11.) *Austin* did not reject *Reed*; it rejected the Fifth Circuit's application of *Reed*,

"that a regulation cannot be content neutral if it requires reading the sign at issue[.]"

*Austin*, 596 U.S. at 69. Both *Reed* and *Austin* explicitly hold that a speech regulation

is content-based if it "applies to particular speech because of the topic discussed or the

idea or message expressed." *Id.* (quoting *Reed*, 576 U.S. at 163). *Austin* only allows

for regulations of solicitation that do not "discriminate based on topic, subject matter,

---

[6]    Unless, of course, the purchase is of "an item for an amount far exceeding its value, under circumstances where a reasonable person would understand that the purchase is in substance a donation[.]" (*See* ECF 1-3, at 10, § 66-1(b)(3).)

or viewpoint." *Id*. at 72 (citation omitted). Importantly, the Court in *Austin* used the ordinary definition of "solicitation": "speech 'requesting or seeking to obtain something' or '[a]n attempt or effort to gain business.'" *Id*. (quoting Black's Law Dictionary 1677 (11th ed. 2019)). (*See* ECF 151, at 11.) *Austin* is not applicable here, because the Panhandling Ordinance does discriminate based on subject matter, as the district court correctly held. (ECF 151, at 11-12.) *Accord Henagan v. City of Lafayette*, No. 6:21-CV-03946, 2022 WL 4546721, at *3 (W.D. La. Sept. 27, 2022) (ordinance restricting begging and soliciting money "does discriminate based upon topic and speaker").

The City also incorrectly characterizes its Ordinance as a "reasonable time, place, and manner restriction" subject to intermediate scrutiny, citing *Smith v. City of Fort Lauderdale*, 177 F.3d 954 (11th Cir. 1999), and *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000). (Initial Br., at 27.) First, these cases were decided before *Reed*; second, they cannot support the City's contention because content-based restrictions can never be time, place, and manner restrictions. *See Baker v. City of Fort Worth*, 506 F. Supp. 3d 413, 420 (N.D. Tex. 2020) ("[C]ontent neutrality is a prerequisite to reasonable time, place, and manner restrictions."); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989) ("[A] regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, *content neutral* interests[.]") (emphasis added). *Austin* does not change the analysis.

-16-

Unlike in *Reed*, in which the challenged ordinance contained "content-discriminatory classifications[,]" the off-premises sign ordinance in *Austin* was content-neutral because it required an examination of the sign's message only to inform "the sign's relative location" and therefore was "similar to ordinary time, place, or manner restrictions." 596 U.S. at 71.

It is true that *Austin* notes the First Amendment allows for regulations of solicitation, relying on *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981). 596 U.S. at 72. However, as the district court correctly held, this does not save the City's Panhandling Ordinance, because it is a restriction on only one type of solicitation: requests for immediate donations, Plaintiffs' chosen message. (ECF 151, at 12.) Unlike in *Heffron*, where a state law applied "evenhandedly" to all solicitations "whether commercial or charitable," 425 U.S. at 648-49, (*see* ECF 151, at 12), the Panhandling Ordinance does not reach all solicitation; the Ordinance allows politicians to solicit signatures on petitions or clergy to hold signs reading "God Bless" and advertise their congregation at a busy intersection without fear of arrest. (*See* ECF 1-3 at 10, § 66-1(b)(3) (applying restrictions to requests for donations but not purchases of goods "unless a reasonable person would understand that the purchase is in substance a donation").) In contrast, when Plaintiff Driggers stands at an intersection with a sign that reads "Anything Helps, God-Bless," he is taken to jail. (*See, e.g.*, ECF 39-1, at 5-15.) Whether

-17-

Plaintiffs violate the Ordinance depends on what they say—for example, whether they offer an item for sale or make a request for charity. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 27 (2010) (a law is content-based if violation "depends on what [plaintiffs] say"); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (First Amendment prohibits "restrictions distinguishing among different speakers, allowing speech by some but not others"). Because only certain types of solicitation (requests for immediate donations), but not others (ticket sellers, etc.), are regulated by the Panhandling Ordinance, it contains "content-discriminatory classifications" and therefore is not a time, place, and manner restriction. *See Austin*, 596 U.S. at 71.

None of the out-of-circuit cases relied on by the City lend support to its claim that *Austin* changed *Reed*'s application to panhandling ordinances. (*See* Initial Br., at 35-39.)

*Waggoner v. City of Dallas* reveals nothing about how *Austin* applies to a restriction like the Ordinance. *See* No. 3:22-CV-2776-E-BK, 2023 WL 5516474 (N.D. Tex. July 20, 2023), *report & rec. adopted*, No. 3:22-CV-02776-E-BK, 2023 WL 5517220 (N.D. Tex. Aug. 25, 2023). At issue in that case was an ordinance which banned any person from standing or walking on a median that measured six feet or less. *Id.* at *1. The court found that it was a content-neutral ordinance because it did not apply based on topic or message. *Id.* at *6. Similarly, the restriction at issue in *United States v. Lee* was content-neutral because the area around the Capitol Building

was not closed to "one group of people discussing a certain topic. Instead, it was walled off to all members of the public *writ large*." *United States v. Lee*, No. 1:23-cr-00368 (TNM), 2024 WL 4836401, at *5 (D.D.C. Nov. 20, 2024). Absent evidence that these content-neutral restrictions were underpinned by an impermissible purpose, intermediate scrutiny properly applied. *See Waggoner*, 2023 WL 5516474, at *6.

*LaCroix v. Town of Fort Myers Beach* is also of limited relevance here. 38 F.4th 941 (11th Cir. 2022). LaCroix sued Fort Myers Beach because of a total ban on portable, handheld signs throughout the town. *Id.* at 945. Like in *Austin*, the regulation of portable signs was deemed to be content neutral—it regulated certain signs based on how they were physically displayed, without regard to content or the message they display. *Id.* at 947-49.

Finally, in *Mazo v. N.J. Secretary of State*, plaintiffs challenged an election law requiring candidates to obtain consent from individuals or incorporated associations before naming them in slogans, arguing that the consent requirement was content-based because "the law applies only when certain words are present in a statement" or when an official would need to "examine the content of the message that is conveyed to determine whether a violation has occurred." 54 F.4th 124, 132, 148 (3d Cir. 2022). Like in *Austin*, the Third Circuit rejected this argument, determining instead that the consent requirement was content-neutral because it "applies to all slogans, regardless of message," and does not "single out any topic of subject matter

-19-

for differential treatment," instead distinguishing slogans based on "extrinsic features unrelated to the message conveyed"—i.e., consent. *Id.* at 148-49 (internal citation omitted).

Contrary to the City's argument, none of these cases suggests that *Austin* constitutes a true "point of departure" from *Reed* (Initial Br., at 45 n.9), instead confirming that the two decisions are entirely consistent. *See, e.g., Mazo*, 54 F.4th at 148-149; *Waggoner*, 2023 WL 5516474, at *5. Because the Panhandling Ordinance restricts only certain solicitations based on their content, these cases—and *Austin*—are distinguishable. *See Messina*, 546 F. Supp. 3d at 1240-41 (because ordinance restricting "[a]ny solicitation made in person *requesting an immediate donation of money or other thing of value*. . . . prohibits one topic and allows all others, it is content based") (alteration in original). (*See also* ECF 72, at 9 ("individuals are only prohibited from asking for charitable donations while permitted to solicit regarding any other topic").)

Indeed, cases from other circuits confirm the district court's reading that *Austin* did not overturn *Reed*, and that the two decisions are entirely consistent. *See Int'l Outdoor, Inc. v. City of Troy*, 77 F.4th 432, 436 n.1 (6th Cir. 2023) (applying *Reed* to determine that restrictions were content-based after "supplemental briefing on what, if any, effect the recent Supreme Court decision" in *Austin* had); *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 127 (3d Cir. 2023) (applying *Austin* to hold that a

law "singl[ing] out [a] topic or subject matter for differential treatment" is content based) (quotations and citations omitted); *GEFT Outdoor, LLC v. City of Westfield*, 39 F.4th 821, 824 (7th Cir. 2022) (differentiating *Austin* from *Reed* in that "the City of Austin had not prohibited any sign based on its political or ideological message"); *Project Veritas v. Schmidt*, No. 22-35271, 2025 WL 37879, at *12 (9th Cir. Jan. 7, 2025) (citing *Reed* and *Austin* to explain that a law is content-neutral "so long as it does not discriminate on the basis of viewpoint or restrict discussion of an entire topic").

In its Order entering a preliminary injunction, the district court properly considered the impact of *Austin* on the content neutrality analysis set forth in *Reed*, and ultimately determined that the City's Panhandling Ordinance was more like the ordinance at issue in *Reed* than the one at issue in *Austin* because a "specific topic—requests for charity—is subject to different treatment than other messages." (ECF 72, at 11.) It again considered whether the Ordinance was content-based under *Austin* in its Order granting summary judgment to Plaintiffs and came to the same conclusion. (ECF 151, at 11-12.) There is no error in the district court's determination that "the Challenged Provisions are content based because they apply only to solicitations for charitable donations." (ECF 151, at 10.)

**C.    The City Cannot Use A "Function or Purpose" Proxy To Escape The Fact That The Panhandling Ordinance Is Content-Based.**

The City tries to distinguish the overwhelming body of case law finding regulations nearly identical to the Panhandling Ordinance to be content-based by employing an impermissible "function or purpose" proxy. *See Reed*, 576 U.S. at 163. The City claims that because any request for a donation is regulated, regardless of what the requester says, the Ordinance does not discriminate based on content; this reasoning is based on a flawed premise.

Defendant's argument justifies the Ordinance based on the reasons the speech is uttered—that the speaker is requesting a donation—rather than what the speaker says. But "a regulation of speech cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result." *Austin*, 596 U.S. 61, 74. This is one of the ways that the Town of Gilbert in *Reed* ran afoul of the First Amendment in its sign regulations; there, the Town applied a different regulatory scheme to signs based on their purpose (whether they were "temporary directional signs," "ideological signs" or "political signs"). 576 U.S. at 165.

Here, the City attempts to disguise an obvious content-based restriction of protected speech—a law inhibiting charitable solicitation—as a permissible regulation of "requests for donations." This is an impermissible function or purpose proxy; the

Ordinance still makes distinctions based on the communicative content of the speech at issue: what is being requested. Because the Ordinance only "limits in-person, vocal solicitations for money or things of value" and "*doesn't* touch other topics of discussion," its application does depend on what a person says. *Messina*, 546 F. Supp. 3d at 1240; *see also Loper v. N.Y.C. Police Dep't,* 999 F.2d 699, 704 (2d Cir. 1993) ("Even without particularized speech, however, the presence of an unkempt and disheveled person holding out his or her hand or a cup to receive a donation itself conveys a message of need for support and assistance.").

To evade this straightforward conclusion, the City suggests that there is some difference between solicitation for charity and requests for donations.[7] The case law reveals no such distinction; requests for donations, charitable solicitation, and panhandling or begging are all uniformly considered protected speech. *Schaumburg*, 444 U.S. at 632 ("charitable appeals for funds"); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 788 (1988) ("solicitation of charitable contributions"); *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) ("asking for charity or gifts"); *Speet v. Schuette*, 726 F.3d 867, 873-75 (6th Cir. 2013) ("begging" or "soliciting alms"); *Reynolds v. Middleton*, 779 F.3d 222, 225 (4th Cir. 2015) ("panhandling and solicitation of charitable contributions"); *Smith*, 177 F.3d at 956 ("charitable

---

[7]  It should be noted that the City's 30(b)(6) witness stated that the Ordinance only applies to solicitations for charitable donations. (ECF 170:2-171:6.)

solicitation," "panhandling," and "begging"); *Loper*, 999 F.2d at 704 (2d Cir. 1993) ("begging" and "charitable solicitation").

Moreover, it is unquestionable that Plaintiffs' requests for donations are charitable solicitations. (*See supra* Statement of Facts, at 5-6.) Black's Law Dictionary defines the act of "charity" as "[a]id given to the poor, the suffering, or the general community for religious, educational, economic, public-safety, or medical purposes" and "charitable" as "[d]edicated to a general public purpose, [usually] for the benefit of needy people who cannot pay for benefits received." *Charity*, Black's Law Dictionary (12th ed. 2024); *Charitable*, Black's Law Dictionary (12th ed. 2024). Plaintiffs "solicit the charity of others" by "communicating their personal needs." *Loper*, 999 F.2d at 704 ("We see little difference between those who solicit for organized charities and those who solicit for themselves in regard to the message conveyed. . . . The distinction is not significant for First Amendment purposes.").

Accompanying otherwise protected speech with a solicitation for funds or a request for a donation does not strip that speech of its protected status. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976) ("Speech likewise is protected even though . . . it may involve a solicitation to purchase or otherwise pay or contribute money.") (citation omitted); *cf. Murdock v. Pennsylvania*, 319 U.S. 105, 111 (1943) (holding that the distribution of handbills was not transformed into an unprotected commercial activity by the solicitation of funds).

And because "charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it has not been dealt with in our cases as a variety of purely commercial speech." *Schaumburg*, 444 U.S. at 632; *accord Riley*, 487 U.S. at 796 (applying the test for fully protected expression to the speech of professional fundraisers).

The City's reliance on claimed similarities between this case and *National Federation of the Blind of Texas, Inc. v. Arlington* is unavailing. There, the Fifth Circuit determined that the challenged ordinance was content-neutral because it "prohibit[ed] the placement in certain locations" of all donation boxes throughout the city, without regard to the signage on the boxes or "the taxable status, mission, or *purpose* of the person or entity placing the donation box." 109 F.4th 728, 734 (5th Cir. 2024) (emphasis added). The Fifth Circuit rejected an argument that the ordinance was content-based because it only regulated "receptacles that solicit donations" and therefore targeted charitable solicitations, stating that "donation boxes can be operated for non-charitable purposes." *Id.* at 735. That conclusion has no import here, as the Plaintiffs are engaged in charitable solicitation, and the Ordinance does target their purpose: requesting donations as a means of support. Moreover, Arlington's ordinance

regulated merely the placement of receptacles[8] rather than in-person appeals for funds that necessarily involve the transmission of communications indicating a need for support, food, shelter, clothing, or other necessities. *See Loper*, 999 F.2d at 704.

Even assuming, *arguendo*, that donations bins can be regulated without reference to a message or purpose, the speech of a person engaged in charitable solicitation cannot be parsed to separate the request for a donation and the underlying message. *See Riley*, 487 U.S. at 796 ("Our lodestars in deciding what level of scrutiny to apply to a compelled statement must be the nature of the speech taken as a whole and the effect of the compelled statement thereon. This is the teaching of *Schaumburg* ..., in which we refused to separate the component parts of charitable solicitations from the fully protected whole."). "[S]olicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues" and "without solicitation the flow of such information and advocacy would likely cease." *Schaumberg*, 444 U.S.

---

[8]    Similarly, in *U'SAgain, LLC v. City of Los Angeles*, No. CV 24-6210-CBM-BFMx, 2024 WL 4127273, at *3 (C.D. Cal. Sept. 9, 2024), the regulated "collection bins" were defined as containers "used for collecting salvageable personal property" that were regulated "without regard to the charitable or business purpose." *But see Planet Aid v. City of St. Johns*, 782 F.3d 318, 325 (6th Cir. 2015) ("A charitable donation bin can—and does—'speak' . . . . A passer-by who sees a donation bin may be motivated by it to research the charity to decide if he wants to donate—in so doing, the passer-by will gain new information about the social problem the charity seeks to remedy.").

at 632.

The district court's interpretation of the regulated speech was not in error. As the City clearly acknowledges, whether it is referred to as panhandling, begging, or charitable solicitation, only requests for immediate donations—and not all solicitations—are restricted by the Panhandling Ordinance. (Initial Br., at 41-42; ECF 1-3, at 10, § 66-1(b)(3).) This distinction is what renders the Ordinance content-based and thus subject to strict scrutiny. The district court did not abuse its discretion in finding that "the plain language of the Ordinance at issue in this case circumscribes only solicitations for donations, but not solicitations to patronize a business, attend an event, or support a religious or social cause." (ECF 151, at 12.)

## II.   EVEN IF DEEMED FACIALLY CONTENT-NEUTRAL, THE PANHANDLING ORDINANCE IS CONTENT-BASED BECAUSE IT TARGETS CERTAIN SPEAKERS AND THEIR MESSAGES.

Even if this Court were to find that the Ordinance is facially content-neutral, it should still be reviewed under strict scrutiny. Some laws, "though facially content neutral, will be considered content-based regulations of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Reed*, 576 U.S. at 164 (quoting *Ward*, 491 U.S. at 791). Where "there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction, for instance, that restriction may be content based" and thus subject

to strict scrutiny. *Austin*, 596 U.S. at 76; *cf. TikTok Inc. v. Garland*, No. 24-656, 2025 WL 222571, at *6 (U.S. Jan. 17, 2025) (challenged law is content neutral because it "neither references the content of speech on TikTok nor reflects disagreement with the message such speech conveys").

The Panhandling Ordinance cannot escape that it is an inherently content-based restriction. (*See* ECF 105, at 6.) First, "the statute's plain text establishes its content-based nature, because it defines the prohibited conduct by referring to the content of the speech—a request for an immediate donation of money or something else of value[.]" *Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*, 470 F. Supp. 3d 888, 903 (S.D. Ind. 2020) (citing *Reed,* 576 U.S. at 163). (*See* ECF 1-3, at 8-12, § 66-1(b) & (c).)

Second, the Panhandling Ordinance itself and the voluminous record the City provides as justification for the Ordinance focuses on only a certain type of speech— "panhandling and begging"—and those who participate in that speech— "panhandlers and beggars." (*See generally* ECF 1-3, at 2-8, § 66-1(a); ECF 20-2 to 20-12.) The City Commission designed the Ordinance "to target those speakers and their messages for disfavored treatment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011). Measures passed solely to target a particular type of speech or speaker, though facially content neutral, are unconstitutional. *Id.* at 566. The "absence of a neutral justification" for a restriction on speech "prevents the city from defending [that restriction] as content

neutral." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429-30 (1993).

In its passage of the Panhandling Ordinance, the City also relies on the legislative record and "effectiveness" of a nearly identical ordinance passed by the nearby city of St. Augustine, Florida. (*See* ECF 20-2, at 189-90; *see generally* ECF 20-10 to 20-12). While the City erroneously claims that this reliance demonstrates narrow tailoring, it is more significant that the City's use of St. Augustine's legislative record reveals that it intended the Ordinance to target panhandlers and their speech. (*See* ECF 20-5, at 83-84 (testimony from Danny Fuqua that he and his wife looked for panhandlers but did not see any while visiting St. Augustine after that city passed its ordinance); ECF 20-5, at 214-15 (testimony from Officer James Thomas that he "went all over the historic district looking for panhandlers" on a recent visit to St. Augustine and "couldn't get anyone to panhandle me")).

The legislative history used to justify the Ordinance lays bare its true goal: to remove disfavored speakers and their speech from the City. (*See, e.g.*, ECF 1-3, at 7, § 66-1(a) (justifying the Ordinance's speech restrictions due to the troublesome "presence of panhandlers and beggars" and "habits attributable to panhandlers").) Accordingly, the Ordinance must be subjected to strict scrutiny even if deemed facially content-neutral.

III.  **THE DISTRICT COURT CORRECTLY HELD THAT THE CITY'S PANHANDLING ORDINANCE CANNOT SURVIVE EITHER STRICT OR INTERMEDIATE SCRUTINY.**

Because the Panhandling Ordinance is content-based, it must be reviewed under strict scrutiny, which "usually sounds the death knell for a challenged ordinance, particularly in the arena of the First Amendment." *Messina*, 546 F. Supp. 3d at 1239; *see also Williams Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) ("We have emphasized that 'it is the rare case' in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest.") (citation omitted). However, because the Ordinance is not narrowly tailored to any of the City's proffered interests, it fails constitutional review regardless of whether strict or intermediate scrutiny applies.

A.  **The Panhandling Ordinance Is Not Narrowly Tailored To Any Compelling Government Interest.**

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. The City must also show that the laws are the "least restrictive means" of accomplishing that vital interest. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). Moreover, because "'content-based regulations are presumptively invalid,'. . . the Government bears the burden to rebut that

presumption." *Id.* at 817 (citation omitted). The district court correctly found that the Panhandling Ordinance is not narrowly tailored. (ECF 151, at 13-14 ("Assuming for the sake of argument that [the interests the City asserts] are compelling interests, each of the Challenged Provisions fails strict scrutiny.").)

Laws are not narrowly tailored where they "burden substantially more speech than is necessary to further the government's legitimate interests[,]" and are therefore fatally over-inclusive. *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quoting *Ward*, 491 U.S. at 799). Laws may also fail the narrow tailoring requirement when they are under-inclusive, in that they single out a certain type of speech but do not regulate others that are equally problematic. *See Reed*, 576 U.S. at 172; *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 802 (2011).[9]

As discussed more fully below, while the City posits many problems associated

---

[9]  Plaintiffs agree that over- or under-inclusiveness are not independent First Amendment violations. However, these doctrines are not, as the City contends, tools to determine whether a law is content-based. (Initial Br., at 58, n.14.) Rather, the over- or under-inclusiveness of a speech restriction are considered to determine whether a law is narrowly tailored. *See Williams Yulee*, 575 U.S. at 449 ("Underinclusiveness can also reveal that a law does not actually advance a compelling interest."); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 122 n.* (1991) (a statute is overinclusive and thus not narrowly tailored where "a substantial portion of the burden on speech does not serve to advance" the government's purported goals) (citing *Ward*, 491 U.S. at 799).

with the speech regulated by the Panhandling Ordinance, it is not narrowly tailored because it is both over- and under-inclusive. It is over-inclusive because it sweeps up speech that does not implicate the interests that purportedly justify it, such as a person sitting quietly on the city Boardwalk holding a sign that reads "Please help." The Ordinance is under-inclusive because it ignores other forms of speech that would have the same impact as the prohibited speech, such as a person walking into traffic to solicit signatures for a petition.

The only compelling interests recited in the Ordinance are protecting citizens' lives, health, safety and welfare. (ECF 1-3, at 3.)[10] Assuming, *arguendo*, that preserving public health and traffic and pedestrian safety are compelling interests (Initial Br., at 57-59), the Panhandling Ordinance cannot survive strict scrutiny because it is not narrowly tailored to those interests.

The City cites to problems with public urination and defecation (Initial Br., at 55-56), but the act of requesting immediate donations in public does not cause those problems,[11] nor does the Ordinance prohibit them. (*See generally* ECF 1-3.) The City

---

[10]   The other interests articulated in the Ordinance have not been deemed to be compelling. (*See* ECF 1-3, at 2-8.) *See Messina*, 546 F. Supp. 3d at 1243-44 (protecting economic interests or making residents and tourists feel less intimidated or fearful are not compelling interests).

[11]   The City makes much of the testimony of Dr. Steven Miles, who opined that exposure to "open defecation or urination in the City" would be "detrimental to the health of citizens and tourists." (Initial Br., at 56.) However, the medical literature upon which Dr. Miles relies nowhere mentions the act of panhandling, does not

cannot justify a restriction on speech by relying on the fact that certain objectionable but unrelated conduct is linked to those that engage in that speech. *See Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1294 (D. Colo. 2015) ("[T]hreatening behavior may accompany panhandling, but the correct solution is not to outlaw panhandling. The focus must be on the threatening behavior. Thus, the problem in this case is that Grand Junction has taken a sledgehammer to a problem that can and should be solved with a scalpel."). The Ordinance is not narrowly tailored to public health because it does not address such an interest in a "direct and material way." *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994). Moreover, any public health issues related to public urination and defecation can be more effectively addressed using the City's Disorderly Conduct ordinance, which makes it a unlawful to "defoul[] or disturb[] public property or private property of another so as to create an unsafe, unhealthy or unsanitary condition." (*See* ECF 108-11; ECF 106-1, 49:2-12.)

Similarly, the Panhandling Ordinance is not narrowly tailored to the City's interests in pedestrian and traffic safety. As noted above and as identified by the district court, the provisions of the Ordinance focused on traffic safety restrict only

---

establish any link between panhandling and infectious disease, and was furnished by the City's counsel, rather than through Dr. Miles's own independent research. (*See* ECF 109, at 6.)

panhandling, or requests for immediate donations, and were therefore underinclusive. (ECF 151, at 14.) Regulations that restrict charitable solicitation but not other types of speech have been found unconstitutional even where the state interest is to promote traffic safety. *Vigue v. Shoar*, 494 F. Supp. 3d 1204, 1224-25 (M.D. Fla. 2020); *Messina,* 546 F. Supp. 3d at 1248. Just as in *Messina*, there is no explanation for why panhandling is inherently more dangerous than other speech on or near roadways. Approaching cars near traffic signals to solicit immediate donations is banned, but approaching cars to talk about politics or anything else is allowed. Such restrictions are under-inclusive; there is no legitimate reason to single out requests for donations from other types of speech—political or commercial solicitation that creates a traffic hazard is "equally dangerous." *See Rodgers*, 942 F.3d at 457; *Bischoff v. Florida*, 242 F. Supp. 2d 1226, 1257 (M.D. Fla. 2003). Thus, these provisions are not narrowly tailored and violate the First Amendment.

The various harms that the City recites (ECF 1-3, at 2-8, § 66-1(a)) can be also addressed by less intrusive tools independent of the Panhandling Ordinance, and the City offers no evidence that it has even considered, much less attempted to use, these tools to combat the complained-of harms. *McCullen*, 573 U.S. at 494-95; *see also McCraw v. City of Okla. City*, 973 F.3d 1057, 1075 (10th Cir. 2020) ("But the only way for the City to evaluate alternatives is to *consider* them—precisely the burden articulated in *McCullen*. Because the City presents us with no evidence that it

contemplated the relative efficacy or burden on speech of any alternatives, we conclude it has not met its burden."). Plaintiffs have pointed to a variety of other laws that could be enforced to prevent the harms allegedly associated with "panhandling" without burdening protected speech: state statutes prohibiting trespass, §§ 810.08 & 810.09, Fla. Stat.; disorderly conduct and breach of the peace, § 877.03, Fla. Stat.; assault and battery, §§ 784.011 & 784.03, Fla. Stat.; requiring vehicles and pedestrians to yield to emergency vehicles, § 316.126 Fla. Stat.; or the City's own disorderly conduct, battery, littering, obstruction of traffic, and trespass ordinances. (*See* ECF 108, at 11-13; ECF 108-11 to ECF 108-15.) However, the City fails to demonstrate that it has attempted to use or even contemplated using these laws to prevent the problems it associates with panhandling.

In short, the City has not shown that the Panhandling Ordinance is narrowly tailored to a compelling state interest, and therefore the district court did not err in finding that the Ordinance fails strict scrutiny.

### B.   The Panhandling Ordinance Is Not Narrowly Tailored To Any Significant Government Interest.

The City attempts to find fault with the Order granting a preliminary injunction by stating that the district court did not address intermediate scrutiny. (Initial Br., at 46-47.) Of course, the court did not need to address this level of scrutiny because it concluded that the Ordinance was content-based. However, the Ordinance fails even

if reviewed under intermediate scrutiny, which requires that the restrictions: (a) serve

a significant government interest; (b) are narrowly tailored to advance that interest;

and (c) leave open ample alternative channels of communication. *Ward*, 491 U.S. at

791. The City is unable to meet its burden to show that the Ordinance satisfies

intermediate scrutiny, as it is not narrowly tailored to its asserted interests.

The narrow tailoring inquiry is a crucial part of intermediate scrutiny:

> The tailoring requirement does not simply guard against an
> impermissible desire to censor. The government may attempt to
> suppress speech not only because it disagrees with the message
> being expressed, but also for mere convenience. Where certain
> speech is associated with particular problems, silencing the speech
> is sometimes the path of least resistance. But by demanding a
> close fit between ends and means, the tailoring requirement
> prevents the government from too readily "sacrific[ing] speech for
> efficiency."

*McCullen*, 573 U.S. at 486 (citing *Riley,* 487 U.S. at 795).  For a content-neutral

speech restriction to be narrowly tailored, the City must demonstrate that the

restriction does not burden substantially more speech than necessary to further its

interests. *Id.* To do so requires a showing "that it seriously undertook to address the

problem with less intrusive tools readily available to it," *id.* at 494, and that "it

actually tried other methods to address the problem." *See Reynolds*, 779 F.3d at 229

(*McCullen*'s rejection of the Commonwealth's narrow tailoring argument makes clear

that "argument unsupported by the evidence will not suffice to carry the government's

burden" under intermediate scrutiny). Here, the City falls far short of *McCullen*'s

requirements.

Plaintiffs do not dispute that some (although not all) of the interests asserted by the City are significant, e.g., the health and safety of its residents. However, the City fails to demonstrate—or even argue—how the Ordinance is narrowly tailored to those interests, offering "little evidence of non-speculative harms or interests that the Ordinance's restrictions alleviate in a direct and material way." *See Brewer v. City of Albuquerque*, 18 F.4th 1205, 1227 (10th Cir. 2021).

The City points to anecdotal evidence admitted at the legislative hearings and claims this demonstrates narrow tailoring (Initial Br., at 47, 51), but fails to address whether the Panhandling Ordinance burdens more speech than necessary to further its legitimate interests, an absence particularly telling here, where the City's evidence of "problems posed by panhandling" relates to conduct it associates with panhandlers and not the speech actually being restricted by the ordinance. (*See* ECF 1-3, at 7-8, § 66-1(a).) In fact, the "problems to which the evidence *does* point are not likely to be ameliorated by the relevant subsections of the Ordinance." *Brewer*, 18 F.4th at 1227; *see also Messina*, 713 F. Supp. 3d 1292, 1327-28 (S.D. Fla., Jan. 26, 2024) (ordinance not narrowly tailored because the City failed to provide specific evidence demonstrating the traffic problems asserted by the City were caused by the prohibited solicitation). As detailed previously, *see supra* § III(A), the Ordinance is both over- and under-inclusive. It does not prohibit the harmful conduct that the City cites to

justify it, and the City can prevent said harm by simply enforcing other laws that directly proscribe the complained-of conduct. And, as also discussed above, the City has entirely failed to address whether it has considered or attempted to use readily available, less intrusive tools. *See supra* § III(A).

The City suggests that the District Court improperly discounted the City's legislative judgment. (Initial Br., at 49, 53.) But the deference shown to the legislative branch does not insulate it from judicial review— "[o]n the contrary, we have stressed in First Amendment cases that the deference afforded to legislative findings does not foreclose our independent judgment of the facts bearing on an issue of constitutional law." *Turner Broad. Sys.*, 512 U.S. at 666 (quotations & citation omitted); *see also Buehrle v. City of Key West*, 813 F.3d 973, 979 (11th Cir. 2015) ("[T]he City must demonstrate that it had a reasonable basis for believing that its regulation would further these legitimate interests. This burden is not a rigorous one. But a municipality cannot get away with shoddy data or reasoning.") (citation omitted).

Under intermediate scrutiny, while it is true that a regulation need not be the least restrictive means of serving the government's interests, "there is a significant distinction between failing to employ less-restrictive means and completely disregarding obvious less-burdensome alternatives." *FF Cosms. FL, Inc. v. City of Miami Bch.*, 866 F.3d 1290, 1300 (11th Cir. 2017). And the means chosen to regulate speech must not be "substantially broader than necessary to achieve the government's

-38-

interest." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1295 (11th Cir. 2021) (citing *Ward*, 491 U.S. at 799-800). Like the regulations that failed under intermediate scrutiny in *Fort Lauderdale Food Not Bombs* and *FF Cosmetics*, the Panhandling Ordinance is not narrowly tailored because it is "broader than necessary" to achieve the City's interests, 11 F.4th at 1296, and "the record shows that obvious less-burdensome alternatives were completely disregarded." 866 F.3d at 1301.

The City lastly relies on the third prong of the intermediate scrutiny test, claiming that the Ordinance provides "alternative avenues of communication." (Initial Br., at 53.) As an initial matter, the City's claim that the Ordinance is narrowly tailored because it leaves open alternative channels of speech improperly "conflates the narrow tailoring inquiry with an alternative channels analysis." *Brewer*, 18 F.4th at 1239 (emphasis removed); *see also Cutting v. City of Portland*, 802 F.3d 79, 88 (1st Cir. 2015) ("the fact that there are other places where plaintiffs may engage in their expressive activity 'misses the point'") (quoting *McCullen*, 573 U.S. at 489).

Even when considered on its merits, the City's argument about alternative channels is unconvincing. The City recites that more than 97.5% of the City is available for solicitation. (Initial Br., at 26, 51.) Assuming, *arguendo*, that the 97.5%

figure is accurate (though Plaintiffs intended to disprove this at trial),[12] the City offers no analysis of how much of that percentage offers sufficient opportunities for Plaintiffs to communicate their messages of need in a public forum. For example, a large percentage of City land is not public but rather private property that is unavailable for charitable solicitation due to trespass and other state property laws. *See* §§ 70.002, 810.08, & 810.09, Fla. Stat. (2024). Also, much of that percentage includes areas, such as undeveloped forests, where there are few other people, and thus those "alternative channels" are not likely to reach the desired audience. *See City of Ladue v. Gilleo*, 512 U.S. 43, 56-57 (1994) ("Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means."); *McCullen*, 573 U.S. at 488-90 (burdens on speech posed by buffer zone law were not addressed by assertions that plaintiffs could still chant slogans or display signs). The City's blanket assertion that there are alternative avenues of communication is insufficient.

The City has not demonstrated that the Ordinance is narrowly tailored, or that there are sufficient alternative channels of communications, and so the Ordinance fails even intermediate scrutiny.

---

[12] While disputed, the fact of what percentage of the City is available for panhandling is not material to the District Court's summary judgment determination. *See infra* § IV(D) & (E).

## IV.   THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT AS THERE WERE NO DISPUTED ISSUES OF MATERIAL FACT.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material if it might affect the outcome of the suit under governing law and it is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (citations & quotations omitted). Once the moving party has met its burden to show an absence of a genuine issue of material fact, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial" such that "a reasonable jury could rule in its favor." *Dawkins v. Fulton Cnty. Gov't*, 733 F.3d 1084, 1088-89 (11th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Here, Defendant raises no genuine issue of material fact.

The City argues that there are numerous disputed facts, and therefore summary judgment is not warranted. (Initial Br., at 59-71.) However, it offered no evidence in district court that meaningfully rebutted the facts showing Plaintiffs have standing,

and the other facts the City claims are in dispute are immaterial to the legal issues that were raised in Plaintiffs' Motion for Summary Judgment or were not genuinely contested. The district court's decision simply found that the Ordinance is content-based and not narrowly tailored to the governmental interests that purportedly justify it. Even though the parties disagree about whether the Ordinance actually advances the City's proffered interests and the availability of other areas for panhandling, such disputes are immaterial to whether the Ordinance is content-based and meets narrow tailoring.

Appellant states that there are five areas of disputed facts that required the district court to deny the Motion for Summary Judgment. (Initial Br., 63-64.) Each is addressed in turn.

### A.     Whether Plaintiffs have standing

Standing is a threshold question in any case, and plaintiffs must show that they have standing at each stage of the proceedings in the manner and with the degree of evidence appropriate for that stage. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). To have standing, a plaintiff must demonstrate (1) injury in fact, (2) that the injury was caused by the complained-of conduct, and (3) that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In the First Amendment context, injury occurs when "the operation or enforcement of the government policy would cause a reasonable would-

be speaker to self-censor . . . ." *Henry v. Attorney General, Ala.*, 45 F.4th 1272, 1288 (11th Cir. 2022). "The fundamental question" is "whether the challenged policy 'objectively chills' protected expression." *Id.*

In this case, the district court correctly found that the undisputed evidence demonstrated that Plaintiffs have standing as to each of the challenged provisions of the Ordinance. Plaintiffs hold signs, hold out hats, and make verbal requests soliciting donations in the City. (ECF 8-1 ¶¶ 6-7; ECF 8-2 ¶¶ 6-7; ECF 8-3 ¶¶ 6-8, 18; ECF 8-4 ¶ 7.) They request donations on sidewalks and at intersections in the City, (ECF 39-1, at 1, ¶ 6; ECF 39-2, at 1, ¶ 6; ECF 39-3, at 1, ¶¶ 5-6; ECF 39-4, at 1, ¶ 7), and the maps in the record show that the exclusion zones created by the Ordinance overlap with these areas. (*See, e.g.*, ECF 20-6, at 27 (ATM); ECF 20-5, at 180, 203 (schools); ECF 20-6, at 26 (park); ECF 20-5, at 203, ECF 20-6, at 5 (business entrances).) Further, Plaintiffs Driggers, Rowland, and Willis testified that they make requests at night, (ECF 39-5; ECF 39-6; ECF 39-7), and all Plaintiffs stated they may in the future make requests in ways that are prohibited by the Ordinance's ban on "aggressive" panhandling. (ECF 108-1, at 9-10 ¶10; ECF 108-2, at 10 ¶10; ECF 108-3, at 9-10 ¶10; ECF 108-4, at 10 ¶10.) Plaintiffs have been arrested and/or threatened with arrest for violation of the Panhandling Ordinance within the City, (ECF 39-1, at 2, ¶¶ 10-15; ECF 39-2, at 2, ¶¶ 10-12; ECF 39-3, at 2, ¶¶ 9-12; ECF 39-4, at 2, ¶¶ 10, 12), and they have curtailed their speech—requests for donations upon which they

rely to survive—due to the City's enforcement of the Ordinance. (ECF 39-1, at 2-3, ¶¶ 11-20; ECF 39-2, at 2, ¶¶ 13-15; ECF 39-3, at 2-3, ¶¶ 13, 18; ECF 39-4, at 2, ¶¶ 10, 13.)

The enforcement actions taken by City police give Plaintiffs their own legally cognizable interest in challenging the constitutionality of the Panhandling Ordinance. *Leverett v. City of Pinellas Park*, 775 F.2d 1536, 1539 (11th Cir. 1985) (Plaintiffs had standing to challenge an ordinance that "interfere[d], directly and continuously, with the way [they] normally conduct their affairs"). Plaintiffs' injuries were caused by the City's passage and enforcement of the Ordinance and can be redressed by relief granted through this action. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1267 (11th Cir. 2006).

Defendant claims that standing was disputed as to two provisions of the Ordinance: the ban on requesting immediate donations at night and the prohibition against "aggressive" panhandling.[13] (Initial Br., at 70 n.16.) However, the City offered no evidence whatsoever to rebut the Plaintiffs' sworn declarations that they panhandle

---

[13] In its response to Plaintiffs' Motion for Summary, the City also argued that the Plaintiffs lacked standing as to the location restrictions. (ECF 122, at 3.) However, in its initial brief, the City did not raise this argument, and has therefore waived it. *Fed. Sav. & Loan Ins. Corp. v. Haralson,* 813 F.2d 370, 373 n.3 (11th Cir. 1987) ("[I]ssues that clearly are not designated in the appellant's brief normally are deemed abandoned."). In any event, the district court correctly determined that Plaintiffs had standing as to these provisions because the restricted areas significantly overlapped with sidewalks and intersections. (ECF 151, at 7.)

at night, or that they may engage in conduct defined as "aggressive panhandling" in the future.

In the summary judgment context, "[a] nonmoving party . . . cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial. The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull*, 932 F.2d 1572, 1576 (11th Cir. 1991) (citations omitted). Instead, when asserting that a fact is genuinely disputed, the nonmoving party must specifically point to evidence. *See Dawkins*, 733 F.3d at 1088-89 (11th Cir. 2013); *see also* Fed. R. Civ. P. 56(c)(1) (requiring a party to support its assertion that a fact is genuinely disputed by specific citation to the record, show that the materials cited do not establish the absence of a genuine dispute, or show that an adverse party cannot produce admissible evidence to support the fact). Here, the City has cited no evidence to disprove Plaintiffs' standing, relying instead on conclusory statements that there is factual dispute. (Initial Br., at 70 n.16.) The City fails to demonstrate that there is a genuine issue of material fact regarding standing, and the district court properly determined that the Plaintiffs have standing to challenge the Ordinance.

## B.    The nature of the government's interests

Only disputes over facts that might affect the outcome of the suit under the governing law are material and preclude the entry of summary judgment. *Anderson*,

477 U.S. at 248. While there may be contested facts about the City's interests, any disputes in this regard are not material to the district court's summary judgment ruling. When it granted summary judgment, the district court assumed for the sake of argument that the Defendant's proffered interests were compelling. (ECF 151, at 13.) For the purposes of the summary judgment order, any resolution of factual disputes regarding the City's interests would not put it in a better position and would not affect the outcome of the case. Accordingly, the disputed facts around public health and safety that Defendant raises in its brief (Initial Br., at 66-67) are entirely immaterial, because the court already made all reasonable inferences on these points in its favor.

### C.     Whether the City's interests are likely to be advanced by the Ordinance

Similarly, while the efficacy of the Ordinance is contested, this issue was not material to the district court's decision. The district court found that the Ordinance is a content-based regulation subject to strict scrutiny. (ECF 151, at 10-12.) To withstand strict scrutiny, the City must prove that the Ordinance "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 156 U.S. at 171. The court's decision below was based on a finding that the Ordinance was not narrowly tailored to the City's interests. (ECF 151, at 12-14.) The district did not evaluate whether the City's interests were furthered by the Ordinance because it did not need to; even if the City's interests were furthered, the Ordinance still failed strict scrutiny because it was

not narrowly tailored. Therefore, factual disputes about whether the City's interests are furthered by the Ordinance are not material to the district court's decision.

### D.      The degree to which speech is burdened by the Ordinance

This area of factual dispute is also not material. The City couches its argument about the burden of the Ordinance on speech as a question of "alternative avenues of communication" and the factual issue of how much of the City is still available for immediate requests for donation. (Initial Br., at 64-65.) However, the alternative avenues of communication factor is separate from the question of narrow tailoring, *Brewer*, 18 F.4th at 1239, and is only relevant if a law is evaluated under intermediate scrutiny, rather than strict scrutiny. *See, e.g.*, *Crawford v. Lungren*, 96 F.3d 380, 384 (9th Cir. 1996). As explained above, the district court's decision applied strict scrutiny, and therefore the alternative avenues of communication factor was inapplicable and factual disputes related to that factor were immaterial. *See McCullen*, 573 U.S. at 479. Moreover, even if the Ordinance is reviewed under intermediate scrutiny, it fails constitutional review as it is not narrowly tailored. There is, thus, no need to address whether it leaves "ample alternative channels of communication." *See id.* at 496 n.9; *supra*, § III(B).

### E.      Whether the Ordinance is narrowly tailored

While the legal question of whether the Ordinance is narrowly tailored to the City's compelling interests is central to the district court's order and this appeal, the

facts that underlie that decision are not genuinely disputed, and Defendant points to no evidence "such that a reasonable jury could return a verdict" in its favor. *Anderson*, 477 U.S. at 248.

The City did not meaningfully rebut the material facts showing that the Ordinance is not narrowly tailored, as required when an assertion is contested. *See* Fed. R. Civ. P. 56(c)(1). The City cited only four allegedly disputed facts relevant to narrow tailoring in its summary judgment response. (ECF 122, at 6-7.) First, whether it attempted to use other available laws to address the problems it associates with panhandling. (*Id.*) However, instead of pointing to a specific document or deposition, it cites generally to 1,384 pages of legislative history records. (*Id.*) Surely this does not meet its burden to point to "specific facts" showing a genuine issue for trial." *See Celotex Corp.*, 477 U.S. at 324.

Second, the City claimed that the fact that it evaluated a similar ordinance used in St. Augustine showed that it considered alternative means of regulating panhandling. (ECF 122, at 6.) However, the St. Augustine ordinance was essentially the same as the City's Panhandling Ordinance, and the City hired the same attorney to pass it (*compare* ECF 1-3 *with* ECF 20-10, at 2-17; *see* ECF 108, at 5; ECF 106-6, at 33:8-10.) That the City considered an ordinance with provisions nearly identical—and thus similarly burdensome on protected speech—to those it ultimately passed does not show that it considered any *less restrictive* alternatives and thus is not

-48-

material to the narrow tailoring inquiry. *See McCullen*, 573 U.S. at 494-95; *Billups v. City of Charleston,* 961 F.3d 673, 689 (4th Cir. 2020); *FF Cosms. FL, Inc.*, 866 F.3d at 1301.

Third, the City asserted that the amount of the City that remains available for solicitation, i.e., the "geographic scope of the ordinance" is in dispute. (ECF 122, at 6.) As noted twice before, this argument conflates narrow tailoring analysis with alternative channels analysis, s*ee supra*, at 38, 47, and is not a meaningful factual dispute for the narrow tailoring inquiry. When determining whether the Ordinance is narrowly tailored to the City's interests, it does not matter how much of the rest of the City is available. The question is whether the area excluded by the Ordinance is over- or under-inclusive of the City's interests. *See, e.g., Cutting*, 802 F.3d at 88-90. Thus, while this fact is disputed, it is not material.

Last, the City asserted that the "balance [sic] on speech is slight" and the City's "multiple interests would not be served by a less restrictive alternative." (ECF 122, at 6-7.) The City's attempt to create a dispute of fact on this point fares no better. Narrow tailoring requires a showing "that [the City] seriously undertook to address the problem with less intrusive tools readily available to it" and "that it considered different methods that other jurisdictions have found effective." *McCullen*, 573 U.S. at 494. The City makes conclusory statements that there are no less restrictive alternatives; however, the evidence it cites does not support that assertion. Although

the City claims that it could not address its interests through the enforcement of other laws, (ECF 106-6, at 87:13-16), there is no evidence that the City actually tried to use other measures to ameliorate its asserted problems. In fact, the City's own 30(b)(6) representative admitted as much: "Q: What evidence does the City have that it has attempted to use these other laws in order to prohibit the problems? A: I just told you. We haven't." (ECF 106-6, at 86:24-87:2; *see* ECF 108, at 13.)

In sum, the Ordinance is not narrowly tailored because it is both over- and under-inclusive, or otherwise prohibits conduct that is already illegal under existing laws. The Ordinance's provisions fall into four general categories, addressed more fully below: location-based, time of day, traffic, and conduct-related restrictions, and Defendant cites no specific, material, disputed facts that would undermine the Court's determination that none of the Challenged Provisions are narrowly tailored.

### 1.    Location-based restrictions

The Ordinance prohibits panhandling at various locations throughout the City. (ECF 1-3, at 11-12, §§ 66-1(c)(3) & (c)(4)(b)-(d).) The Defendant cites a number of facts to support its contention that panhandlers obstruct roadways and sidewalks and create traffic safety and health concerns. (Initial Br., at 47.) However, these facts are not disputed and are not material to whether the ordinance is narrowly tailored. Defendant relies on "common-sense conclusion[s]" (*id.*) but doesn't provide any actual evidence connecting the locations where panhandling is prohibited to "[its]

asserted health and safety concerns." (ECF 151, at 13; *see* ECF 106-6, 103:17-107:22; 111:14-113:24.) There are numerous cases that have determined that similar generalized concerns about safety hazards are not sufficiently narrowly tailored to location-based panhandling restrictions. *See Messina*, 546 F. Supp. 3d at 1244-45; *see also Norton v. City of Springfield*, 806 F.3d 411, 412-13 (7th Cir. 2015); *McLaughlin v. City of Lowell*, 140 F. Supp. 3d 177, 195-96 (D. Mass. 2015); *Homeless Helping Homeless, Inc., v. City of Tampa*, No. 8:15-cv-1219-T-23AAS, 2016 WL 4162882, at *5 (M.D. Fla. Aug. 5, 2016).

2.    Time of day restriction

The Ordinance forbids panhandling after dark. (ECF 1-3, at 12, § 66-1(c)(4)(i).) The City's initial brief identifies no specific, disputed facts that would support the conclusion that the nighttime restriction on panhandling is necessary to advance its health and safety interests. (*See* Initial Br., at 47- 48.) The City fails to argue how a ban on panhandling after dark is related, much less narrowly tailored, to these interests. (*Id.*) *See Browne*, 136 F. Supp. 3d at 1292 (the City does "not cite[] to any evidence or provide[] any meaningful argument to establish that a 'blanket prohibition on panhandling at night is necessary to advance public safety'"). Instead, it primarily justifies this provision as intended to prevent people from feeling uncomfortable. (ECF 106-1, 97:14-23; ECF 106-6, 113:11-24, 134:2-7.) Such vague generalizations do not meet strict scrutiny. *Messina*, 546 F. Supp. 3d at 1239 (rejecting City attempts

to justify panhandling ordinances "by invoking a general interest in making its residents and tourists *feel* more 'comfortable'"). The time-of-day restriction also sweeps up a significant amount of perfectly innocent conduct, and it does not apply to other types of speech that could cause the same problems. (ECF 106-1, 99:6-25.) It is not narrowly tailored.

### 3. Traffic restrictions

The Ordinance prohibits panhandling within 150 feet of many traffic signals and approaching the occupant of a motor vehicle for the purpose of panhandling, soliciting, or begging when done in an aggressive manner. (ECF 1-3, 11-12, §§ 66-1(c)(3)(g)), (c)(4)(a).) The Ordinance bans approaching cars to solicit immediate donations but approaching cars to promote political candidates or sell tickets is allowed, (ECF 106-2, at 70:2-22), and the City provides no explanation for why panhandling is more dangerous than other speech on or near roadways. As noted above, such restrictions are not narrowly tailored. *See supra*, at 32-33.

### 4. Conduct-related restrictions

Again, the City fails to identify any specific, disputed facts to demonstrate that the Ordinance's prohibitions on "aggressive" panhandling (ECF 1-3, at 8-9, 11-12, § 66-1(b)(2), (c)(1), (c)(4)(a) & (c)(4)(e)-(h)) are narrowly tailored. Regardless of whether the City's generalizations of panhandlers as people who commit other violent crimes are disputed, none of the evidence cited by Defendant explains why a

restriction on *speech* is necessary to address these concerns, and thus these facts are not material. Like other aggressive panhandling ordinances that have been deemed unconstitutional across the country, the Panhandling Ordinance "sweep[s] in much more speech than is necessary to promote public safety, including speech that is entirely innocuous[,]" *Messina*, 546 F. Supp. 3d at 1240, such as, for example, continued appeals after the initial request is turned down. (ECF 1-3, at 8, § 66-1(b)(2)(b).) There is nothing inherently dangerous about a second request, and Defendant identifies no disputed facts that counsel a different conclusion (Initial Br., at 47-48.) *See Messina*, 546 F. Supp. 3d at 1245. These provisions also ban such conduct in relation to charitable donations but not other types of speech, and Defendant fails to point to any disputed facts that would explain why unwanted touching and disorderly conduct are more problematic when the speaker is asking for a donation rather than conveying any other message. (Initial Br., at 47-48.) *See also Messina*, 546 F. Supp. 3d at 1245; *McLaughlin*, 140 F. Supp. 3d at 193-94.

Defendant did not rebut or undermine the facts relied upon by the Plaintiffs in the district court, nor does it do so in its initial brief in this appeal. The City claims that its legislative history creates an issue of fact (Initial Br. at 66), but the bottom line is that *even if all the facts alleged by the City in its legislative history are true*, the Ordinance is not narrowly tailored. In short, there are no genuine issues of material fact that would necessitate a trial in this case.

## V.    CONCLUSION.

For the reasons set forth herein, Plaintiffs-Appellees respectfully request that this Court find that the district court did not abuse its discretion: (1) in concluding that the City's Panhandling Ordinance is content-based and does not survive strict scrutiny, and (2) by issuing the permanent injunction. The district court's order should be affirmed.

Respectfully submitted,

/s/ *Chelsea Dunn*

**Chelsea Dunn**, Fla. Bar No. 1013541
Chelsea.Dunn@southernlegal.org
**Jodi Siegel**, Fla. Bar No. 511617
Jodi.Siegel@southernlegal.org
**Daniel Marshall**, Fla. Bar No. 617210
Dan.Marshall@southernlegal.org
**Southern Legal Counsel, Inc.**
1229 NW 12th Avenue
Gainesville, FL 32601-4113
(352) 271-8890

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 12,921 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been

prepared in a proportionally-spaced typeface using WordPerfect 12 in 14 font Times New Roman.

/s/ *Chelsea Dunn*
Attorneys for Plaintiffs-Appellants

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that an original and four copies of the foregoing brief were sent to the Clerk of Court, 56 Forsyth Street, N.W., Atlanta, GA 30303, and that the brief was electronically filed with the Court and served on all counsel of record via the CM/ECF system, on this <u>27th day of January, 2025</u>.

/s/ <em>Chelsea Dunn</em>
Attorneys for Plaintiffs-Appellants
